**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| EDUARDO RODRIGUEZ,<br><br>Petitioner,<br><br>v.<br><br>SUPERINTENDENT MATTHEW DIVRIS,<br><br>Respondent. | Civ. No.: 4:23-cv-40107-MRG |

<u>**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS [ECF No. 1]**</u>

**GUZMAN, J.**

In March 2018, Eduardo Rodriguez ("Rodriguez" or "Petitioner") was convicted of two counts of aggravated rape, kidnapping, and indecent assault and battery by a jury of his peers. The Petitioner immediately appealed his conviction to the Massachusetts Court of Appeals ("Appeals Court") which affirmed the conviction and sentence. <u>See</u> <u>Commonwealth v. Rodriguez</u>, 193 N.E.3d 495 (Mass. App. Ct. 2022) (Table) (West). The Massachusetts Supreme Judicial Court ("SJC") denied Petitioner's application for leave to obtain further appellate review ("ALOFAR").

Petitioner, proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 raising three grounds for relief. [ECF No. 1]. For the reasons stated below, the Petition for Writ of Habeas Corpus is **<u>DENIED</u>**.

1

## I.    BACKGROUND

A federal court must review habeas petitions under 28 U.S.C. § 2254 respecting that "'the state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary.'" Muller v. Goguen, 385 F.Supp.3d 121, 124 (D. Mass. 2019) (quoting Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir. 2002)). The presumption of correctness "remains true when those findings are made by a state appellate court as well as when they are made by a state trial court." Id. (quoting Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002) (citations omitted)). In the present case, the SJC denied Petitioner's application for further review without comment, therefore, the Court must carefully review the last reasoned state-court decision. Commonwealth v. Rodriguez, 196 N.E.3d 750 (Mass. 2022) (Table) (summarily denying appellate review); Janosky v. St. Amand, 594 F.3d 39, 47 (1st Cir. 2010) ("Because the SJC summarily denied further appellate review, we look to the last reasoned state-court decision[.]") The following facts are drawn from the Court of Appeals' opinion, Rodriguez, 193 N.E.3d 495, at *1–2.

The Court of Appeals summarized the Commonwealth's case as follows:

### A.  Relevant Facts

On August 22, 2016, at about 1:00 a.m., the victim was walking on the Southwest Corridor in Boston to meet her friends at a nearby hotel when the defendant approached her from behind on a bicycle. The defendant told her that he had a knife and was going to rob her but that she would be all right if she "just cooperated." He then put down his bike, held the victim's hand, told her to pretend that they were a couple, and walked with her until they reached the Carter Playground. He brought her to a corner of the playground, took her money and phone, and raped her. He then found a bottle of sports drink nearby and poured liquid on and inside her and tried to remove his ejaculate. He told the victim to stay on the ground until he was gone, and he ran away toward Davenport Street.

The victim found her friends at the hotel and then went to a hospital, where she was examined by a nurse and interviewed by a police officer and a detective. Through their investigation, the police learned that the defendant was being monitored by a GPS bracelet and was in the Carter Playground area just before the assault, traveling at a speed consistent with riding a bike. The GPS data showed that the defendant had continued riding on a path along the Southwest Corridor until his movement stopped and he then began moving back

toward the playground at a speed consistent with walking. He remained stationary in the playground for several minutes, then ran away toward Davenport Street. Using the GPS data, the police obtained video surveillance from several locations that showed that the defendant had changed his clothes after the assault. The police recovered items of clothing from an alleyway where the GPS data showed the defendant had spent more than ten minutes shortly after the assault.

The police also recovered a bike, near where the defendant first approached the victim, that matched the victim's description of the defendant's bike. They recovered a sports drink bottle from the area where the rape occurred, and between there and Davenport Street they recovered the victim's phone. They recovered a damaged GPS bracelet, with the same serial number as the one the defendant had been wearing, in the area where GPS data showed that the bracelet became detached from the defendant's body a few hours after the rape.

The victim picked the defendant out of a photographic array that day. The deoxyribonucleic acid (DNA) in semen recovered from the victim's body matched the DNA recovered from a buccal swab of the defendant to a high degree of statistical significance. At trial, the defendant did not contest having sex with the victim at the playground but asserted through cross-examination and argument that it was a chance encounter and the victim had consented.

Id. at *1-2.

## B. Procedural History

On March 23, 2018, a jury convicted Petitioner of two counts of aggravated rape, kidnapping, indecent assault and battery, and unarmed robbery. [Gov't Supplemental Answer, ("S.A.") at 013, ECF No. 15-1].[1] On March 26, 2018, Petitioner was found to be a subsequent offender by the trial judge, and Petitioner filed a notice of appeal. [Id.] On March 27, 2018, Petitioner was sentenced to two concurrent thirty-five-year terms in state prison for the two counts of aggravated rape, and ten years of probation for the convictions of kidnapping and indecent assault and battery. [Id.] At sentencing, the conviction for unarmed robbery was dismissed as duplicative of the conviction of aggravated rape. [Id. at 014].

---

[1] For the sake of consistency, the Court will cite to the supplemental answer using the "S.A." page enumeration at the bottom of each page in the Government's supplemental answer filing. [ECF No. 15-1].

The Court of Appeals affirmed Petitioner's sentence on July 25, 2022. See Rodriguez, 193 N.E.3d 495; [S.A. at 221]. Petitioner then filed an ALOFAR with the SJC which was denied. [S.A. at 223–24, 286].

A.  Petitions for Writ of Habeas Corpus

On February 13, 2023, Petitioner filed his first petition for a Writ of Habeas Corpus under 28 U.S.C. § 2554. [See No. 23-cv-10329-MRG, ("Habeas 1"), ECF No. 1]. This habeas petition included both exhausted and unexhausted claims, therefore, Petitioner requested a stay of the action while he pursued his unexhausted claims in state court. [Habeas 1, ECF No. 7]. The Respondent filed a motion to dismiss, noting the unexhausted claims and an opposition to the motion to stay. [Habeas 1, ECF Nos. 13, 17]. The Court ultimately denied the motion to stay and informed Petitioner that his petition would be dismissed without prejudice unless he filed an amended petition which included only exhausted claims addressed by the state court. [Habeas 1, ECF No. 19]. Petitioner re-filed his petition but did not withdraw his unexhausted claims, therefore, this Court dismissed his petition without prejudice. [Habeas 1, ECF Nos. 20, 22]. In the initial action, Petitioner filed an additional motion to stay and a motion for reconsideration of the Order of dismissal, both requests were denied by this Court. [Habeas 1, ECF Nos. 24–27].

On August 30, 2023, Petitioner filed the current habeas petition (No. 4:23-cv-40107-MRG) raising three grounds for relief which were addressed by the Court of Appeals: (1) the GPS evidence admitted at his trial was more prejudicial than probative, which deprived Petitioner of his Fourteenth Amendment due process rights; (2) the Commonwealth introduced the GPS evidence at trial through hearsay, in violation of the Confrontation Clause; and (3) the Commonwealth's closing argument contained three errors, which Petitioner argues infected the trial with unfairness as to make the resulting conviction a violation of his due process rights. [ECF No. 1]. Once more, Petitioner filed a motion to stay before this Court in October

2023 where he introduced the same arguments from his prior habeas action. [ECF No. 7]. On December 22, 2023, Respondent opposed the motion and filed an answer and supplemental answer to the petition. [ECF Nos. 13, 15, 15-1]. Once more, this Court denied Petitioner's request to stay the case and a scheduling order was put in place for continued briefing. [ECF Nos. 20–22].

On November 22, 2024, Petitioner filed an "Exhibit" to serve as his memorandum in support of his Habeas petition. [ECF Nos. 23, 24]. On December 23, 2024, Petitioner filed his fourth motion to stay his Habeas petition before this Court, which generated additional oppositions, extension of time requests, and replies between the parties. [ECF Nos. 26–29, 31]. After several extensions, in April 2025, Respondent filed a memorandum of law in opposition to the petition for writ of Habeas Corpus. [ECF No. 38]. Petitioner filed a reply and a memorandum of support for his petition. [ECF Nos. 41, 42].

On April 24, 2025, the Court summarily denied Petitioner's fourth motion to stay. [ECF No. 39]. Petitioner appealed this decision to the First Circuit, [ECF No. 43], and the First Circuit subsequently denied interlocutory review of the decision and dismissed the appeal on February 17, 2026. [ECF Nos. 49, 53]. Below, the Court finally turns to the merits of the petition.

## II.   LEGAL STANDARDS

"The writ of habeas corpus is an extraordinary remedy that guards only against extreme malfunctions in the state criminal justice systems." Rivera v. Kelly, 763 F.Supp.3d 105, 121 (D. Mass. 2025) (quoting Watkins v. Medeiros, 36 F.4th 373, 384 (1st Cir. 2022)). The merits of a habeas petition must be addressed by the standards outlined in 28 U.S.C. § 2254(d), which place the burden on Petitioner to prove that the state court's decisions as to all grounds were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Shinn v. Ramirez, 596 U.S. 366, 375 (2022); Id. ("To respect our system of dual

sovereignty . . . the availability of habeas relief is narrowly circumscribed."). A decision is unreasonable where "the state court identifie[d] the correct governing legal principle . . . but unreasonably applie[d] that principle" when viewed objectively. Williams v. Taylor, 529 U.S. 362, 365 (2000). Mere error by the state court is not enough to sustain a petition. See McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002). For a state court decision to be contrary to Federal law, "it either applies a test that is inconsistent with one announced by the [Supreme] Court or reaches the opposite conclusion on materially indistinguishable facts." Rashad, 300 F.3d at 34–35 (quotation marks and citation omitted).

Federal habeas review does not serve as a vehicle to relitigate state court factual findings or to correct every error of state law. See Nadworny v. Fair, 872 F.2d 1093, 1096 (1st Cir. 1989). The Supreme Court has "recognized that federal habeas review cannot serve as a substitute for ordinary error correction through appeal[.]" Shinn, 596 U.S. at 377 (quoting Harrington v. Richter, 562 U.S. 86, 102–03 (2011)). Rather, as stated, "[t]he writ of habeas corpus is an extraordinary remedy that guards only against extreme malfunctions in the state criminal justice systems." Id. The state court decision must have "some increment of incorrectness beyond error" that is "great enough to make the decision unreasonable in the independent and objective judgment of the federal court" that is reviewing the habeas petition. McCambridge, 303 F.3d at 36 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)). Indeed, "[t]he standard for evaluating the state court's decision is 'highly deferential,' with 'the presumption that state courts know and follow the law' and the requirement that the decisions of the state court 'be given the benefit of the doubt.'" Simpson v. Spencer, 372 F. Supp. 2d 140, 145 (D. Mass. 2005) (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

A petitioner cannot obtain relief unless he "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A) (stating rule as to those "in custody pursuant to the judgment of a State court"). This exhaustion doctrine exists to foster "respectful, harmonious relations between the state

and federal judiciaries." Wood v. Milyard, 566 U.S. 463, 471 (2012). To meet the doctrine's requirement, a "petitioner must demonstrate that he tendered each claim 'in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'" Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997) (quoting Scarpa v. Dubois, 38 F.3d 1, 6 (1st Cir. 1994)).

### III.    DISCUSSION

Respondent asserts that the present habeas petition must be dismissed because Petitioner did not file a memorandum of law in support of his petition. [ECF No. 38 at 11]. In lieu of a formal memorandum of law, Petitioner filed a twenty-four page "Exhibit" which consists of copies of pleadings from the Suffolk Superior Court, trial exhibits, correspondence between Petitioner and the Somerville Police Department, and the Addendum he filed in the Appeals Court. [Id.] Respondent argues that the three legal grounds raised in the petition are not supported by developed legal argument and therefore should be considered waived from this Court's consideration. [Id.] "A petitioner's failure to explain the rationale and support for his entitlement to habeas on a particular ground in his memorandum can result in waiver of that claim." Lamartine v. Ryan, 215 F. Supp. 3d 189, 193 (D. Mass. 2016) (citing Powell v. Tompkins, 783 F.3d 332, 349 (1st Cir. 2015)).

Many sessions of this Court have found that petitioners have abandoned their claims by failing to argue legal theories in their supporting memorandum of law. [Id. at 11–12 (collecting cases)]. After Respondent filed this opposition argument, Petitioner replied asserting that he has "long since filed his memorandum of law in support of the petition" with the Court and he re-filed his "original memorandum to [his] reply for emphasis," dated November 12, 2024. [ECF No. 41; see ECF No. 42]. The Court reviewed both the present and previous dockets for Petitioner's memorandum of law in support of his petition and found that the Petitioner's first filing of this memorandum occurred beyond the filing deadlines set by the Court in April 2025. [ECF No. 42].

7

The Court notes that the failure to file a memorandum of law in support of a habeas petition is often dispositive. Given the fact that Petitioner is proceeding *pro se* and did file a supporting memorandum for the Court's consideration, [ECF No. 42], although untimely, the Court will review and consider his arguments in the interests of justice. See Simmons v. United States, 142 S. Ct. 23, 25 (2021) (Noting the Supreme Court has "repeatedly stress[ed], 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' [. . .] These liberal construction requirements for *pro se* litigants carry particular weight when courts consider habeas filings, given that 'the writ of habeas corpus plays a vital role in protecting constitutional rights.'" (first quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007); then quoting Slack v. McDaniel, 529 U.S. 473, 483 (2000))); Sena v. Kenneway, 997 F.3d 378, 387 (1st Cir. 2021) ("Because *pro se* litigants are not fungible, however, each case must be evaluated on its own facts."); contra Delaney v. Matesanz, 264 F.3d 7, 15 (1st Cir. 2001) ("While judges are generally lenient with *pro se* [habeas petitioners], the Constitution does not require courts to undertake heroic measures to save *pro se* litigants from the readily foreseeable consequences of their own inaction.").

Given the disposition of this case and its numerous filings, the Court uses its discretion to outline the Court's reasoning as to why this petition must be denied on the merits even with the untimely filed memorandum of law in support.

### A.  Ground One: GPS Evidence and Undue Prejudice

Petitioner asserts that the extensive evidence of his GPS monitoring provided during trial was more prejudicial than probative, which deprived him of his Fourteenth Amendment due process rights. [ECF No. 1 at 5].

This is ultimately an issue of how the trial court applied evidentiary principles recognized under state law. Errors in applying state law do not provide a basis for federal habeas relief.  Estelle v. McGuire,

502 U.S. 62, 67–68 (1991) (citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990)); see also Pulley v. Harris, 465 U.S. 37, 41 (1984). However, "a misbegotten evidentiary ruling that results in a *fundamentally unfair* trial may violate due process and, thus, ground federal habeas relief." Coningford v. Rhode Island, 640 F.3d 478, 484 (1st Cir. 2011) (citing Montana v. Egelhoff, 518 U.S. 37, 43 (1996)) (emphasis added). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." Gomes v. Silva, 958 F.3d 12, 23 (1st Cir. 2020). To amount to a constitutional violation, "the state evidentiary error must so infuse the trial with inflammatory prejudice that it renders a fair trial impossible." Id. at 24. The First Circuit "has held that to provide 'ground[s] [for] federal habeas relief,' an improper ruling on an evidentiary issue in state court 'must be so arbitrary and capricious as to constitute an independent due process . . . violation.'" Garuti v. Roden, 733 F.3d 18, 24 (1st Cir. 2013) (alteration in original) (quoting Coningford, 640 F.3d at 484 (internal quotation omitted)).

The present claim was reviewed on appeal, and the Court of Appeals reasonably and correctly rejected the Petitioner's claim where it applied state law that is consistent with federal evidentiary standards. See Rodriguez, 193 N.E.3d 495, at *4–5; Fed. R. Evid. 403 ("The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . ..”). Like the Court of Appeals, this Court finds that there was no abuse of discretion in the trial judge's decision to allow GPS evidence in this matter. Rodriguez, 193 N.E.3d 495, at *2–4. The Court of Appeals acknowledged that:

> No doubt there was some risk of prejudice from the evidence that the defendant was wearing a GPS bracelet. But there was no evidence of what the defendant had been accused or convicted of doing that led to the requirement that he wear a bracelet; this was not evidence of a propensity to commit any particular kind of crime. Indeed, the judge twice instructed the jury — first when the GPS evidence was introduced and again in her final charge — that they should neither speculate about why he was wearing the bracelet nor draw any inference against him because of it. The jury are presumed to have followed the judge's instructions "to disregard matters withdrawn from their consideration" (citation omitted). Commonwealth v. Helfant, 398 Mass. 214, 228-229, 496 N.E.2d 433 (1986). In

these circumstances, we see no abuse of discretion in the judge's decision that the GPS evidence was more probative than prejudicial.

Id. at *2. Petitioner may disagree with the ruling, but the trial court, and later the Court of Appeals did weigh any unfair prejudice to Rodriguez against the probative value of admitting the GPS evidence, as required by both state and federal law.

Therefore, the Court agrees with the Court of Appeals finding that the trial judge reasonably applied evidentiary rules when considering whether to admit the GPS evidence. Petitioner was not prejudiced, let alone prejudiced to the extent that the trial judge violated his fundamental constitutional rights. Accordingly, Ground One cannot be a basis for habeas relief.

### B.  Ground Two: Hearsay Objection to GPS Evidence

Petitioner asserts that the GPS evidence of his location and speed was admitted through impermissible hearsay testimony by the detective in violation of his constitutional rights and the Confrontation Clause. [ECF No. 1 at 7].  Respondent argues that the "Appeals Court expressly rejected the claim based on an independent and adequate state procedural bar, and as a result the claim is now barred from federal habeas review before this court." [ECF No. 38 at 18].

There is a general prohibition for a federal habeas review where "a state prisoner has defaulted on that claim in state court by virtue of an independent and adequate state procedural rule." Janosky, 594 F.3d at 44 (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). One notable procedural rule is the state's contemporaneous objection rule. The Massachusetts contemporaneous objection rule, which requires a party to make their objections known at the time of the ruling, Mass. R. Crim. P. 22, is an independent and adequate state procedural rule barring federal habeas review. See id.  "The [Supreme Judicial Court] regularly enforces the rule that a claim not raised is waived." Gunter v. Maloney, 291 F.3d 74, 79 (1st Cir. 2002).

To overcome the procedural default to permit federal habeas review, Petitioner must demonstrate either (1) cause and prejudice for the default, or (2) that a failure to review the claim will result in a "fundamental miscarriage of justice," *i.e.*, the conviction of an innocent person. Simpson v. Matesanz, 175 F.3d 200, 209–10 (1st Cir. 1999); Coleman, 501 U.S. at 749–50; House v. Bell, 547 U.S. 518, 536 (2006). This exception "applies only in extraordinary circumstances," Janosky, 594 F.3d at 46 (collecting cases), therefore Petitioner must present "reliable evidence," such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" to mount a successful innocence claim. House, 547 U.S. at 537 (quoting Schlup v. Delo, 513 U.S. 298, 324 (1995)) (internal quotation marks omitted).

As noted by the Court of Appeals, the defendant did not raise this objection during trial and therefore did not preserve his rights on appeal. Rodriguez, 193 N.E.3d 495, at * 3. Regardless, the Court of Appeals conducted a review for whether any error in the unpreserved objection regarding hearsay evidence created a substantial risk of miscarriage of justice. Id. at *3–4.  The Court of Appeals discerned no basis for excusing the procedural default, and Petitioner has made no showing here to support a claim of actual innocence. Id. This Court is aligned with the Court of Appeals' analysis and concludes on this record that there was no fundamental miscarriage of justice.

Therefore, Petitioner has procedurally defaulted on this claim and did not preserve it for a habeas petition. See Rodriguez v. Russo, 495 F. Supp. 2d 158, 169-70 (D. Mass. 2007) (concluding that the alleged grounds for habeas relief were not properly preserved because petitioner failed to contemporaneously object). As such, Petitioner cannot overcome the procedural default and Ground Two cannot be a basis for habeas relief.

11

### C.  Ground Three: Prosecutor's Closing Argument

The Petitioner claims three errors in the prosecutor's closing argument, [ECF No. 1 at 8–9; ECF No. 42 at 21–23].  The Court of Appeals addressed each argument in turn, noting whether there was an objection on the record for each statement.

Here, Petitioner's claims involve both issues of evidentiary decisions and procedural bars previously discussed in this Court's Order. The Court agrees with the Respondent's reasoning and finds that the Petitioner is not entitled to habeas relief on Ground Three for the reasons stated in the Respondent's memorandum. [ECF No. 38 at 25–32]. In particular, the Court of Appeals reasonably and correctly rejected Petitioner's claims of prosecutorial misconduct within a reasonable application of Supreme Court law. Rodriguez, 193 N.E.3d 495, at *6–8. Finding no error in how the Court of Appeals ruled on the Petitioner's claim, and in light of the strong deference afforded to the state court's decision, habeas relief is inappropriate as to Ground Three.

### IV.    CONCLUSION

For the reasons stated above, the Petition for Writ of Habeas Corpus, [ECF No. 1], is **DENIED.** The case is therefore **DISMISSED**.

### V.    CERTIFICATE OF APPEALABILITY

The statute governing appeals of final orders in habeas corpus proceedings provides that an appeal is not permitted "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a "substantial showing," a petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack, 529 U.S. at 484 (quotation marks and citation omitted). "To meet the debatable-

among-jurists-of-reason standard the petitioner must prove 'something more than the absence of frivolity or the existence of mere good faith.'" United States v. Cintron, 281 F. Supp. 3d 241, 242 (D. Mass. 2017) (quoting Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (internal quotation marks omitted)). In ruling on an application for a COA, a district court must indicate which specific issues satisfy the "substantial showing" standard. 28 U.S.C. § 2253(c)(3).

The Court denies the COA with respect to all grounds because Petitioner cannot demonstrate that reasonable jurists would debate whether the Court of Appeals' application of Supreme Court precedent or federal law was objectively unreasonable or was based on unreasonable factual determinations. See 28 U.S.C. § 2254(d)(1)– (2). Moreover, Petitioner has not made a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), therefore, the Court declines to issue a COA.

**SO ORDERED.**

Dated: June 9, 2026

 /s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge

13